# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6622 | **DATE** | 1/14/2002 |
| **CASE TITLE** | Popovich vs. McDonald's Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached order, both McDonald's and Simon's motions to compel arbitration and stay judicial proceedings (15-1, 15-2, 22-1, 22-2) are denied. Plaintiff's motion for a finding of relatedness (item 26-1) is granted; the Court finds that Case No. 01 C 8121, pending before Judge Manning, is related to the present case and will request the Executive Committee to reassign the case to this Court's docket. Defendants are directed to respond to Popovich's amended complaint on or before 1/28/02. The case is set for a status hearing on 2/2/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | JAN 15 | 33 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
JAN 15 2002

| | |
|---|---|
| NICK POPOVICH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 01 C 6622 |
| McDONALD'S CORPORATION, SIMON MARKETING, INC., and JEROME P. JACOBSON, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Nick Popovich, a frequent customer of McDonald's restaurants, has sued McDonald's Corporation and Simon Marketing, Inc., as well as Jerome Jacobson, Simon's director of security, for wrongs allegedly committed in connection with promotional games conducted by McDonald's since 1988. McDonald's and Simon have moved the Court to compel arbitration of the dispute and to stay judicial proceedings pending the outcome of arbitration. Popovich has moved for a finding that a suit filed by McDonald's against Simon, pending before another judge of this Court, is related to this case and should be transferred to this Court's docket. For the reasons stated below, the Court denies defendants' motions to compel arbitration and grants Popovich's motion for a finding of relatedness.

### Facts

Popovich alleges that since 1988, McDonald's has contracted with Simon to conduct its national advertising and run its promotional games, including the recent game "Who Wants to Be

33

a Millionaire." Each game offers participants the chance to win low-value, mid-value, and high-value prizes. The high-value prizes include motor vehicles and/or cash awards of up to $1 million. The games are played by obtaining game pieces that are distributed at McDonald's restaurants, in newspapers, and by direct mail. Customers can win by collecting specific pieces or groups of pieces, or by obtaining an "instant winner" game piece.

According to the amended complaint, Simon acted as McDonald's agent to distribute game pieces. Simon in turn entrusted Jacobson with the responsibility of ensuring the games' integrity and with disseminating the high-value winning pieces. Jacobson, plaintiff alleges, devised a scheme to convert the high-value winning pieces and sell them to associates who falsely represented themselves to be legitimate winners or recruited others to do so. As a result, Popovich and other McDonald's customers had no real opportunity to win the high-level prizes.

Popovich alleges that McDonald's first learned of Jacobson's activities in August 2000, when the Federal Bureau of Investigation advised the company that it was investigating the conduct of the games. Plaintiff alleges that despite this knowledge, McDonald's continued to permit Simon and Jacobson to promote the games, encouraging customers to buy its products in order to win prizes, while knowing full well that it was impossible (or virtually so) for them to win the high-level prizes.

In August 2001, the government announced the indictment of Jacobson and other participants in the scheme, and McDonald's announced that it was suspending the then-current "Pick Your Prize Monopoly Game," which had begun in July 2001. The two $1 million prizes that had been offered to game participants had been diverted by Jacobson.

Popovich filed this lawsuit on August 24, 2001, naming only McDonald's as a defendant,

2

and seeking certification of a class of plaintiffs. On August 31, he moved the Court for a preliminary injunction preventing McDonald's from suspending or terminating the Pick Your Prize game. McDonald's contested the motion, which the Court denied on September 17, 2001.

In early October 2001, in response to the filing of similar lawsuits against McDonald's in various districts (including some cases that were filed in state court and removed by McDonald's to federal court), McDonald's filed with the Judicial Panel for Multidistrict Litigation a motion pursuant to 28 U.S.C. §1407 to transfer and consolidate for pretrial proceedings all pending federal actions. On October 19, McDonald's filed its motion to compel arbitration in the present case. On October 26, Popovich filed an amended complaint, naming Simon and Jacobson as additional defendants, and making claims for breach of contract, unjust enrichment, consumer fraud, and (against Jacobson only) violation of the Racketeer Influenced and Corrupt Organizations Act. Simon followed with its own motion to compel arbitration.

As noted earlier, Popovich's claims concern McDonald's games from 1988 through 2001. In his amended complaint, he seeks certification of a class of plaintiffs and requests an award of compensatory and punitive damages to the plaintiff class, as well as an injunction requiring McDonald's to "complete" the Pick Your Prize game by awarding to legitimate participants all high-level and other prizes that have not been properly awarded.

Each of the McDonald's games had official rules which were available in McDonald's restaurants and elsewhere. The rules for each of the eight games sponsored by McDonald's since 1999 have included a provision stating that

> [e]xcept where prohibited by law, as a condition of participating in this Game, participant agrees that (1) any and all disputes and causes of action arising out of or connected with this Game, or any prizes awarded, shall be resolved

3

> individually, without resort to any form of class action, and exclusively by final
> and binding arbitration under the rules of the American Arbitration Associates and
> held at the AAA regional office nearest the participant; (2) the Federal Arbitration
> Act shall govern the interpretation, enforcement and all proceedings as such
> arbitration; and (3) judgment upon such arbitration award may be entered in any
> court having jurisdiction. Under no circumstances will participant be permitted to
> obtain awards for, and participant hereby waives all rights to claim punitive,
> incidental, or consequential damages, or any other damages, including attorney's
> fees, other than participant's actual out-of-pocket expenses (i.e., costs associated
> with entering this Game), and participant further waives all rights to have
> damages multiplied or increased.

In their motions to compel arbitration and stay judicial proceedings, defendants McDonald's and Simon rely on this contractual provision.

## Discussion

The Federal Arbitration Act establishes a federal policy favoring arbitration of disputes that requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226 (1987). When parties have made an agreement to arbitrate a dispute, the party opposing arbitration bears the burden of proving that the claims at issue should not be subjected to arbitration. *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 91-92 (2000).

Popovich makes several arguments in opposition to arbitration. Two of these are clearly without merit. First, Popovich's claims against Simon are no less subject to arbitration than his claims against McDonald's. The arbitration provision in the game rules is not limited to claims against McDonald's but rather extends to "all disputes and causes of action arising out of or connected with this Game." There is no question that Popovich's claims against Simon are, at least in part, connected with the games that included the arbitration provision.

Second, though a party may waive the right to arbitrate by acting inconsistently with that

4

right, *see, e.g., St. Mary's Medical Center v. Disco Aluminum Products Co.,* 969 F.2d 585, 588 (7th Cir. 1992), McDonald's did not waive its right to arbitrate by opposing Popovich's motion for a preliminary injunction. Popovich made his motion before McDonald's had time to catch its breath after being served with the lawsuit: he filed the motion for preliminary injunction just one week after he filed suit, and the Court denied it just slightly more than two weeks later. Though McDonald's could have sought to compel arbitration at that point, a demand for arbitration would not have precluded the Court from considering the preliminary injunction motion. Even when a claim filed in court is subject to arbitration, a court retains the authority to enter a preliminary injunction to preserve the *status quo ante* and prevent irreparable harm pending a decision by the arbitration panel. *See, e.g., IDS Life Insurance Co. v. SunAmerica, Ltd.,* 103 F.3d 524, 527 (7th Cir. 1996); *Gateway Eastern Ry. v. Terminal Railroad Association,* 35 F.3d 1134, 1141 (7th Cir. 1994). Thus McDonald's opposition to Popovich's motion was in no way inconsistent with the right to arbitrate and does not constitute a waiver. *See Knorr Brake Corp. v. Harbil, Inc.,* 556 F. Supp. 489, 492 (N.D. Ill. 1983); *Motor Werks Partners, L.P. v. BMW of North America, Inc.,* No. 01 C 7178, 2001 WL 1607503, at *4 (N.D. Ill. Dec. 17, 2001).

Popovich's primary argument is that arbitration would be cost-prohibitive. Significant arbitration fees may make an arbitration agreement an ineffective forum for the vindication of statutory rights and therefore unenforceable. *See, e.g,. Dobbins v. Hawk's Enterprises,* 198 F.3d 715, 717 (8th Cir. 1999); *Shankle v. B-G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230, 1234-35 (10th Cir.1999). *Cf. Gilmer v. Interstate/Johnson-Lane Corp.,* 500 U.S. 20, 28 (1991) (requiring arbitration of a federal claim is appropriate if the plaintiff "'effectively may vindicate [his or her] statutory cause of action in the arbitral forum'" (quoting *Mitsubishi Motors*

5

*Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)). In *Green Tree*, the Supreme Court recognized that "[i]t may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90. It ruled that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. If the party opposing arbitration carries that burden, the onus is on the party seeking arbitration to provide contrary evidence. *Id.*

The issue in this case boils down to whether Popovich's claim would be considered under the American Arbitration Association's Rules for the Resolution of Consumer-Related Disputes ("Consumer Rules") or its Commercial Dispute Resolution Procedures ("Commercial Rules"). The Consumer Rules apply only "in cases where the claim is under $10,000, exclusive of interest, arbitration fees, and costs." The Rules "may not be used where there is no stated claim." McDonald's Reply, Ex. A, ¶1. They provide for a modest fee: the consumer and the business each must submit a fee of $125, and the business must also submit an administrative fee of $500. *Id.*, ¶¶2(a), 3. If these were the fees that would be imposed for arbitration of Popovich's claim, the Court would have no hesitation in rejecting Popovich's objection: the fee he would have to pay is less than the fee for filing a complaint in federal court.

But Popovich has carried his burden of demonstrating that the Consumer Rules would not apply. First of all, Popovich is not making a claim for less than $10,000. In his amended complaint, he seeks $20 million in damages for the class. Even assuming, as McDonald's argues, that consideration of the class-wide claim is not appropriate (in light of the game rules' express prohibition on class relief), there is still no basis to squeeze Popovich's claim within the

6

Consumer Rules. In both his individual claim and his class claim, Popovich is claiming what he refers to as an indivisible right to be considered for the high-level prizes. At a minimum, that is a claim of an unspecified value of the type that the AAA's Consumer Rules do not accommodate.

McDonald's points out that the contest rules limit a participant's remedies to recovery of his out-of-pocket costs associated with entering the game – which would consist largely, if not entirely, of the cost of buying food items at McDonald's restaurants. If the Court could rely on this limitation, Popovich's claim would be well under the AAA's maximum for Consumer Rules claims. But Popovich has satisfied his burden of showing that we cannot rely on the contractual limitation in the present context. McDonald's itself has conceded that claims indistinguishable from Popovich's are worth far more than $10,000. In petitioning for removal of similar cases filed in Tennessee and Florida state courts,[1] McDonald's stated:

> Plaintiff has alleged that he was denied access to a 'prize pool' – i.e., property in the form of $1 million cash awards and other high-value prizes ... improperly diverted from the prize pool – in which Plaintiff and members of the putative class hold a common, undivided interest. As alleged, no individual class member has a right to the prize pool or any particular prize. Rather, the putative class as a whole alleges it has a collective and undivided right to this property. Because the value of the diverted prizes plainly exceeds $75,000, the amount in controversy requirement for diversity jurisdiction is met."
>
> ...
>
> The value of the property right which Plaintiff has sued to secure – i.e., the right of uncorrupted access to McDonald's high-value promotional prizes – is in and of itself sufficient to satisfy the $75,000 amount in controversy requirement under 28

---

[1] These removed cases are among the cases that McDonald's has sought to consolidate for pretrial purposes pursuant to 28 U.S.C. §1407. Both were cases without any federal claims, thus making federal jurisdiction appropriate, if at all, only by virtue of diversity of citizenship and satisfaction of the $75,000 amount-in-controversy requirement. We think it safe to assume that none of the plaintiffs in those cases had bought more than $75,000 in McDonald's food items.

7

> U.S.C. §1332. This right is jointly-held by all class members, none of whom has any individual right to a particular prize, yet all of whom have a common interest in the prize pool.

Notice of Removal in *Allen v. McDonald's Corp.*, No. 01-2801 (W.D. Tenn.), at pp. 3-4, 6; Notice of Removal in *Hoyos v. McDonald's Corp.* (S.D. Fla.), at pp. 4-5, 6. McDonald's statements in these cases squarely contradict its current argument that Popovich's claim cannot be worth more than $10,000.

McDonald's tries to finesse this inconsistency by suggesting that it is meaningless: it says that "[a]lthough the putative class' claim to a common and undivided interest in the prize pool may be significant for jurisdictional purposes, it is wholly irrelevant to the issue of arbitration." McDonald's Reply, p. 8. But no such dichotomy exists. The issue in both contexts is what the plaintiff's claim is worth. In *Pratt Central Park Limited Partnership v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir. 1995), the Seventh Circuit concluded (over a dissent by Judge Flaum) that a contractual clause that clearly limits the plaintiff's recovery to an amount less than the federal jurisdictional requirement is sufficient to defeat federal jurisdiction. As the court put it more recently in *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001), a court will not "accept the plaintiff's say-so when deciding how much could be recovered (and thus whether the amount in controversy for diversity jurisdiction is present), even though the maximum recovery depends strongly on the merits." McDonald's cannot say, when it suits its interests, that the plaintiff's claim is worth well over $75,000 but then say, when its interests change, that the claim is worth well under $10,000.

We are reluctant to rely in this context on the doctrine of "judicial estoppel," which in this Circuit may require a party to have obtained a judgment based on an earlier inconsistent

provision (which has not occurred here). *See United States v. Newell*, 239 F.3d 917, 921-22 (7th Cir. 2001). But McDonald's insistence that the amount in controversy in the other similar cases exceeds $75,000 is fairly construed as indicating a recognition (though not an admission) that the contractual limitation may not ultimately cap the recoverable damages. The Seventh Circuit has noted this possibility in the jurisdictional context; in *Normand v. Orkin Exterminating Co.*, 193 F.3d 908 (7th Cir. 1999), it said that under Illinois law "it is doubtful that a contractual limitation of liability would be held to be a bar to fraud," and a claim for fraud "might conceivably support a judgment for consequential or even punitive damages, notwithstanding the limitation of liability." *Id.* at 910 (citations omitted). The plaintiffs in the Tennessee and Florida cases removed by McDonald's had made fraud and/or consumer fraud claims, and so has Popovich.

Thus for present purposes Popovich has made the necessary showing that his claim, if brought before the AAA, would not be governed by the Consumer Rules but rather by the AAA's Commercial Rules. Under those Rules, the costs of arbitration in a case like this one are likely to be staggering; Popovich has submitted an unrebutted affidavit from an AAA-certified arbitrator that the cost is likely to be as much as $48,000 and perhaps as high as $126,000. Popovich himself has averred, unsurprisingly, that costs in that range would be prohibitive, and McDonald's has not disputed that claim. This is sufficient to carry his burden under *Green Tree*. *See Phillips v. Associates Home Equity Services, Inc.*, ___ F. Supp. 2d ___, No. 01 C 1944, 2001 WL 1159216, at *4-5 (N.D. Ill. Sept. 28, 2001). Under the present circumstances, the arbitration provision in the game rules is unenforceable.[2]

---

[2] For this reason, we need not address Popovich's argument that a non-mutual arbitration clause (that is, one which requires only one of the parties to arbitrate claims) is unenforceable
(continued...)

As noted earlier, Popovich has moved the Court for a finding that Case No. 01 C 8121, pending before Judge Manning, is related to the present case within the meaning of Local Rule 40.4. In that case, McDonald's has sued Simon, Simon's parent corporation, Jacobson, and other alleged co-conspirators for violations of the RICO statute and various common law causes of action. The cases arise, in significant part, from the same transactions and occurrences as the present case. Both cases are susceptible of resolution in a single proceeding (Case No. 01 C 8121 is, for all practical purposes, the equivalent of a cross-claim in the present case), and because of the overlap in issues, the handling of both cases by one judge is likely to result in a substantial savings of time and effort. Neither case has progressed to the point that reassignment would delay the proceedings. In sum, the criteria for reassignment under Local Rule 40.4 are met, and Popovich's motion is therefore granted. Reassignment of the case, however, does not necessarily mean that the cases will be consolidated for all purposes; the Court defers for later resolution whether the cases should be tried jointly.

## Conclusion

For the reasons stated above, both McDonald's and Simon's motions to compel arbitration and stay judicial proceedings [docket items 15-1, 15-2, 22-1, 22-2] are denied. Plaintiff's motion for a finding of relatedness [item 26-1] is granted; the Court finds that Case No. 01 C 8121, pending before Judge Manning, is related to the present case and will request the Executive Committee to reassign the case to this Court's docket. Defendants are directed to

---

[2](...continued)
under Illinois law, an issue that has provoked considerable dispute among the judges of this District. *See Thompson v. Illinois Title Loans, Inc.*, No. 99 C 3952, 2000 WL 45493, at *3 (N.D. Ill. Jan. 11, 2000) (citing decisions going both ways).

respond to Popovich's amended complaint on or before January 28, 2002. The case is set for a status hearing on February 1, 2002 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 14, 2002